### KIMBALL and others *v.* HESS and others.

*(Circuit Court, N. D. New York.  February 26, 1883.)*

1. PATENT LAW—CONSTRUCTION OF THE CLAIMS OF THE PATENTEE.
    Where the patentee appears to have been the first to discover a new method or process, the court will, if possible, give a broad enough construction to his claims to cover all such mechanical means as embody the real invention.

2. SAME—INFRINGEMENT.
    The defendants employed the plaintiff's patented process of treating tobacco, with the exception that they made use of an equivalent for the gum arabic used by the plaintiffs to produce the same effect as that rendered by the plaintiff's process. *Held,* an infringement.

*Geo. B. Selden* and *B. F. Thurston,* for complainant.
*W. F. Coggswell* and *H. McGuire,* for defendants.

WALLACE, J.  Infringement is alleged of letters patent granted to the complainant as assignees of William S. Kimball, bearing date June 30, 1874, for an improvement in preparing tobacco.  The patent contains two claims—one for a process and the other for the product.  The invention relates to a process of treating tobacco while being prepared for use by which the product known in the trade as "flake-cut tobacco" is made.  Tobacco known by that name is readily distinguished by its appearance from other varieties of the manufactured article, but was unknown until it was introduced to the trade by the patentee about a year prior to obtaining his patent.  When the process of its preparation is completed, the article as designed for use, instead of being fluffy like the long-cut, or fleecy like the fine-cut, or broken like the granulated, is in the form of thin flakes, the particles adhering closely together and being hard and dry.  When crumbled for use the flake-cut does not pack as closely in the pipe as the other preparations, and thereby facilitates a better draft, and the smoke is cooler and freer, and does not burn the tongue.  Practically there is no difficulty in determining what is meant by the term "flaky" as descriptive of the characteristic of the product.

The utility of the invention is demonstrated by the fact that the "flake-cut" speedily became recognized as an approved preparation of smoking tobacco, and since its introduction has commanded a large and constantly-increasing market. The defendants have added their contribution to the general acknowledgment of its merits by manufacturing it and introducing it to their customers. The validity of the patent is contested upon the grounds that the specification is so ambiguous and obscure as to render the patent void, and that there is neither novelty nor utility in the invention. The reasons why these defenses were held to be untenable were stated by the court orally at the close of the hearing, and it is unnecessary to repeat them now. It has been deemed best, however, to formulate the views of the court in regard to the construction of the patent, in order that there need be no misapprehension as to what constitutes infringement.

In view of the prior state of the art, the gist of the invention described in the patent consists in treating the leaves of the tobacco while they are being prepared for the cutting-machine with a solution of gum arabic or an equivalent adhesive material, so that the leaves will adhere together without other pressure than they are subjected to by the cutting-machine. A sufficient quantity of the gum arabic or its equivalent must be employed, so that the fibers will adhere together after passing through the cutting-machine, and remain in flakes or lamina after the product is dried and prepared for use. This broad construction is given because the patentee was the first, so far as the proofs show, to employ an adhesive material during the process of preparation for the purpose of producing the flaky characteristics which not only serve to distinguish the product, but impart to it its peculiar value.

The proofs show that tobacco prepared for chewing has customarily been treated with a variety of materials for sweetening or flavoring it. Some of these, like licorice, contain sufficient gum to produce more or less adhesion between the leaves when they are moistened and pressed together in the cutting-machine. They were never applied with the object of producing adhesion, and the degree of adhesiveness which they contributed, when appreciable, was inconsiderable. Unless they are used in such proportions as to be not only an equivalent for gum arabic, but to impart the flaky characteristic to the product after it is dried and fully prepared for use, the patented process is not infringed. The defendants for a time adopted the precise treatment described in the patent; subsequently, however, they dispensed with the gum arabic and saturated the leaves

of their tobacco with adhesive substances by sweetening them with syrup, and intermixing with the leaves what is known as plug-scrap, which is highly charged with adhesive material. Their product, upon examination, is found to contain a greater quantity of adhesive material than the complainant's product as usually prepared according to the process of the patent. Whether the defendants have thus attempted a colorable evasion of the patented process, or whether in good faith they have believed themselves justified in adopting their substituted treatment, is not material. They have used an equivalent for the gum arabic of sufficient adhesive properties to impart the flaky characteristic to the product when dried. This is infringement.

The usual decree for an injunction and accounting is ordered.